## Case No. 17,378.

### WELLES v. NEWBERRY.

[4 McLean, 226.] [1]

Circuit Court, D. Michigan. June Term, 1847.

JURISDICTION OF FEDERAL COURT — COLORABLE ASSIGNMENT OF CAUSE OF ACTION.

[Where a note is transferred by a bank to a nonresident of the state to secure a prior debt, and is to be restored to the bank in case the debt is paid, and the transfer is made merely for the purpose of suing in the United States court, the note still remaining the property of the bank, the transferee cannot sue thereon in that court.]

[This was an action on a promissory note by William B. Welles against Oliver Newberry. Heard on motion for a new trial.]

Mr. Romeyn, for plaintiff.
Mr. Bates, for defendant.

WILKINS, District Judge. This cause was tried at the last term, and verdict rendered for the defendant. The action was brought against him as one of the indorsers of a certain promissory note, made by one George L. Whitney, at Detroit, January 21, 1839, for the sum of three thousand five hundred dollars, payable ninety days after date. The principal witness for the plaintiff, was Mr. John A. Welles, who proved the making of the note, the hand-writing of the defendant as indorser, its negotiation and discount at the F. and M. Bank of Michigan, at the time of its date, of which banking institution the witness was then the cashier, the protest of the note at maturity for non-payment, and the regular notice to the indorsers. On cross-examination, Mr. Welles further testified, in substance, as follows: "The Farmers' and Mechanics' Bank continued the owners of the note, until the 10th of March, 1845, when it was assigned by deed under seal, with other notes and assets of the bank to the plaintiff, as collateral security for a loan of money, made to the bank by him, and other stockholders, one of whom was a citizen of this state. The nominal consideration in the deed of assignment, was one thousand two hundred dollars. Under its provisions the proceeds. as collected, were to be applied by the plaintiff, as assignee. in payment of the loan to the bank; after the liquidation of which, by the means thus provided, or otherwise, this note, with others, if uncollected, was to revert to the bank. The note never was out of the possession of the bank—was never actually delivered to the plaintiff—and was transferred expressly with the view of bringing this suit in the court of the United States. The plaintiff was not here at the time of the execution of the assignment, and never had been here before. His first visit to this place, was in the summer of 1845, subsequent to the assignment; and neither he nor any other person ever paid any thing for the note. He was not aware that the plaintiff knew any thing about the transac-

1 [Reported by Hon. John McLean, Circuit Justice.]

tion at the time, or that this particular note had been assigned to him. The bank had a general arrangement with certain of the stockholders, who had made pecuniary advances for its relief, to transfer to them as collateral security certain notes, but the original object in the assignment of this note to the plaintiff without his knowledge, was to enable suit to be brought in the circuit court of the United States, and thereby avoid the decision of the state courts, in relation to proof of notice. Subsequently, in the month of June, the plaintiff ratified the assignment, and accepted this note as collateral security for his advances, but the note itself never was delivered to him, and never passed out of the actual custody of the bank, until delivered by the witness to Mr. Abbot, the attorney of the bank, to bring this suit. The arrangement with the other indorser, was made and completed anterior to the assignment to the plaintiff." The note was delivered to the attorney without explanation, as the note of the plaintiff, and at the time, the bank was indebted to him beyond the amount of the note. Such is the substance of the testimony of Mr. Welles, the witness of the plaintiff, and for a long time the cashier of the Farmers' and Mechanics' Bank of Michigan, a banking institution chartered by this state, and located and doing business in the city of Detroit.

On the question presented by this testimony, the court, among other matters, instructed the jury that: "If they believed that the note was transferred only as collateral security, to secure a prior debt of the bank to the plaintiff, to be accounted for and restored to the bank, in case such debt was otherwise discharged, and for the purpose of suing in the United States court, the note still remaining the property, and in possession of the bank, then such assignment did not absolutely vest the ownership of the note in the plaintiff."

The new trial is asked, on the ground of the insufficiency of the testimony, and error in the charge of the court; but argued mainly on the last point. It is clear that the bank was the real holder of the note, from the period of its negotiation, down to the institution of the suit in this court. The assignment of the plaintiff, under the circumstances, with the sole object of bringing the suit in this court, did not divest the bank of its property, or make the plaintiff the real holder. He was merely the agent of the bank, with authority to collect, and bound to account for the proceeds; and if uncollected, to restore the note to the principal. In fact, the suit was instituted and prosecuted for the sole benefit of, and under the direction of the bank, in the name of the plaintiff. It is true, the possession of a negotiable note is prima facie evidence of the party's being a holder for a valuable consideration. and he is not bound to prove by other evidence, that he is a bona fide holder. But, if it is proved aliunde, that he is but a mere agent, to give jurisdiction to this court, and holds and prosecutes the note

as such, and with such object, he can not recover a judgment upon it here in his own name. Such was the decision of Mr. Justice Story in Thatcher v. Winslow [Case No. 13,-863], and who cited 10 Johns. 387, and 5 Mass. 491.

The point made in Thatcher v. Winslow [supra] was, that the plaintiff was not the owner of the notes, upon which the action was brought, but that they belonged to the Merchants' Bank at Newport, by which they had been originally discounted, and that they had been delivered to the plaintiff for the purpose of enabling suit to be brought upon them in the circuit court of the United States. The evidence here was much stronger against the plaintiff's recovery, for this note was never actually delivered to him, nor was he privy to the deed of assignment at the time of its execution, his name being used without his assent at the time, and the assignment was made to him as a citizen of a foreign jurisdiction, having an interest in the bank, for the sole purpose of enabling the bank to bring suit in this court. Apart from his interest in the bank as a stockholder, the plaintiff had no substantial interest in the note. The jury found the facts that the plaintiff was to account to the bank for the note as agent, and to restore it, if not collected, and that the note still remained the property of the bank, and that the action was prosecuted for the benefit of the bank. Such being the case, he could not maintain an action as the indorsee of the note against the defendant in this court. But, the plaintiff's title to the note, if any he had, was not derived from the contract of indorsement. He did not receive it as negotiable paper, in the course of trade. The note was past due at the time of the transfer, many years previous to the assignment, the note had matured, and had been protested for nonpayment. His title, therefore, was conferred by the deed of assignment, which circumstance alone, was sufficient to defeat his action in this court. Motion for a new trial refused.